UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:22-CR-12-GFVT-MAS-2 |
| v. ) | |
| ) | |
| TRISHA MARIE ANDERSON, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Trisha Marie Anderson ("Anderson") conspired to distribute heroin and 40 grams or more of fentanyl in violation 21 U.S.C. § 846, possessed with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1), and possessed with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). [DE 1].

The United States orally sought detention under 18 U.S.C. § 3142(f)(1)(C) and (E), [DE 17], and the Court conducted a detention hearing on September 23, 2022. [DE 21]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the Court grants the United States' motion for detention.

**I.     BRA FRAMEWORK**

Based on the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United*

1

*States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence that no conditions can reasonably assure the defendant's future appearance. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing

that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply to detention hearings.  18 U.S.C. § 3142(f).  The focus is simply evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998).  Given hearing informality, the Court properly considers a wide range of proof.  The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.  The § 3142(g) factors ultimately drive the overarching analysis.

## II.  ANALYSIS

Anderson rebutted the presumption as to both risk of nonappearance and risk of danger. However, the United States met its burden on both issues, so detention is mandated under the BRA. The United States showed by a preponderance of the evidence that no combination of conditions can reasonably assure that Anderson will appear at the proceedings in this case.  It also established by clear and convincing evidence that no conditions can reasonably assure community safety.  As such, the Court grants the United States' motion for detention.

### A.   RISK OF NONAPPEARANCE

As a threshold matter, the Court finds that Anderson put forth sufficient evidence to overcome the presumption as to risk of nonappearance.  Specifically, Anderson asserted by proffer that she would reside with her father in Washington if released.  Although Anderson's Pretrial Services Report ("PSR") prepared by the United States Probation Office ("USPO") indicates that Anderson's father suffers from alcoholism, Anderson asserted by proffer that her father's alcoholism was under control.  Moreover, Anderson stated that a 2022 failure to appear reflected in her PSR was entered in error and was not the result of her failing to appear at a court proceeding. Rather, after her arrest on state charges underlying the instant federal offenses, Anderson was

mistakenly released from state custody. The state court subsequently issued an arrest warrant for Anderson, and the PSR mistakenly reflects that the warrant was issued for a failure to appear. These facts are sufficient to overcome the light presumption burden. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (discussing that the presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk).

In response, the United States presented evidence by proffer and explanatory testimony of Shelbyville Police Department Detective Joseph Puleo ("Puleo") and United States Probation Officer Brian Rains ("Rains") to demonstrate Anderson's risk of both nonappearance and danger. On balance, the Court concludes the United States has proved by a preponderance of evidence that Anderson presents a serious risk of nonappearance if released pending trial.

Relevant to the risk of nonappearance, the United States noted that Anderson has no verifiable history of employment close in time to her arrest and no stable residence to return to if released. The record and hearing testimony demonstrate that Anderson does not presently have a strong tie to any community. *See* 18 U.S.C. § 3142(g)(3)(A) (directing courts to consider the defendant's "length of residence in the community" and "community ties" in determining the issue of release). Anderson's PSR states that she was unable to provide to the USPO a specific address for where she was living at the time of her May 2022 arrest on state charges underlying this matter, and she instead indicated that she was on a road trip with her co-defendant, Nicholas Flanagan ("Flanagan") when arrested. Specifically, Anderson stated that she resided with Flanagan for approximately eight months before her arrest and that she was homeless for approximately six months before residing with Flanagan.

4

Moreover, Anderson's drug-trafficking charges themselves indicate a risk of flight or nonappearance. *See United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 2447858, at *1 (E.D. Tenn. June 5, 2013) (citing *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (noting that Congress has attached a presumption to those types of crimes, such as drug trafficking, which indicate a "strong probability" that the perpetrator will flee)). Further, Anderson faces a lengthy sentence if convicted of the instant drug-trafficking charges. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee"). Additionally, Anderson has a recent, significant history of substance use, having a habit of using methamphetamines and heroin or fentanyl on a daily basis at the time of her arrest. *See U.S. v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) ("As a frequent drug user defendant constitutes a 'flight risk.'") (citing The Federal Bail and Detention Handbook and S. REP. NO. 225, 98th Cong. 1st Sess. 23, nn. 66, 68 (1983)).

Having found that the United States demonstrated that Anderson poses a risk of nonappearance, the Court also finds that no combination of conditions can sufficiently mitigate that risk. Anderson's daily habit of methamphetamine and heroin or fentanyl use during the time in which she was arrested creates a high risk of nonappearance, even accepting as true Anderson's assertion that she could reside with her mother in Seattle if released. As such, the Court finds by a preponderance of the evidence that no condition or combination of conditions can reasonably assure the Court that Anderson will appear as required. As such, the BRA mandates detention based on the risk of nonappearance.

**B.     RISK OF DANGER**

Though the Court finds pretrial detention is warranted based on Anderson's risk of nonappearance, the Court will analyze danger-based detention in the interest of completeness.

5

Anderson overcame the presumption of detention as to danger risk by asserting by proffer that her criminal history, as reflected in the PSR, is insignificant, reflecting only one charge for criminal solicitation in 2008. Further, Anderson noted that she was not on probation, parole, or release pending trial at the time she committed the instant offense.

The Court finds, however, that the United States has successfully shown by clear and convincing evidence that Anderson's risk of danger proves an independent basis for pretrial detention under the BRA.

### 1. Nature and Circumstances of the Offense

The first BRA factor is the "nature and circumstances of the offense charge, including whether the offense . . . involves . . . a controlled substance [or] firearm[.]" 18 U.S.C. § 3142(g)(1). The nature and circumstances of Anderson's current offenses—conspiracy to distribute and possession with intent to distribute heroin and fentanyl—favors detention.

The nature and circumstances of Anderson's charged crimes are serious and indicate a high risk of dangerousness. Anderson was arrested after a search of the vehicle in which she was a passenger uncovered approximately 1,500 pressed fentanyl pills disguised as 30 mg Percocet pills, 2.6 ounces of heroin, 9.5 grams of methamphetamine, and two firearms. Possession with intent to distribute heroin and fentanyl is an exceptionally dangerous offense that poses a serious risk of harm to the community. *Stone.*, 608 F.3d at 947 n.6 ("And our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant is engaged in violence . . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."). And as noted, the detention presumption stemming from that charge does not vanish, even where, as here, the defendant overcomes the initial presumption that she poses a danger to society. *Stone*, 608 F.3d at 945.

Moreover, the large quantity of drugs found in Anderson's possession at the time of her arrest further increases the risk of danger to the community her release would pose. Indeed, Puleo testified that the seizure of narcotics in Anderson's possession was the largest drug seizure in Shelby County, Kentucky in the last year. *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases).

Anderson's charges and the circumstances surrounding her alleged crimes indicate a high risk of danger to the community, so this factor weighs heavily towards detention.

### 2. Weight of the Dangerousness Evidence

The second factor gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948.

The weight of evidence against Anderson relevant to danger firmly favors detention. At the detention hearing, Puleo explained that Anderson and Flanagan were in the process of trafficking a large amount of extremely dangerous pressed fentanyl pills at the time of their arrest. In May of 2022, Puleo and other officers responded to reports that Anderson and Flanagan were sleeping in their vehicle at a gas station in Shelbyville, Kentucky. Officers searched the vehicle

7

after spotting drug paraphernalia inside of it and discovered several safes secured to the interior of the vehicle. As noted above, officers uncovered approximately 1,500 pressed fentanyl pills disguised as 30 mg Percocet pills, 2.6 ounces of heroin, and 9.5 grams of methamphetamine inside the safes. Officers also found one firearm in the passenger-side floorboard, where Anderson had been sitting, and another in a backpack in the rear of the vehicle. Flanagan eventually told Puleo that he originally purchased 2,500 pressed fentanyl pills in Washington with the intent to sell the pills to a buyer in Sheboygan, Wisconsin. However, the deal with the buyer fell through, so Flanagan and Anderson began travelling toward the Southern United States, where the person who sold Flanagan the narcotics had lined up a buyer. By the time Flanagan and Anderson were arrested in Kentucky, the two had either used or sold approximately 1,000 of the pressed fentanyl pills. Moreover, Puleo testified that the nature of the narcotics found in Anderson and Flanagan's possession was uniquely dangerous. Puleo stated that pressed fentanyl pills disguised as Percocet were responsible for many overdoses in the area in which he operates. Significantly, while Puleo indicated that Flanagan initially arranged the purchase and planned sale of the narcotics, Flanagan stated to Puleo that Anderson "knew everything that [Flanagan] was doing and that she was aware of everything." [Hearing Record at 19:20 – 19:31].

In sum, Puleo presented evidence that Anderson, along with Flanagan, was in the process of trafficking a large quantity of extremely dangerous narcotics at the time of her arrest. This factual backdrop indicates that the weight of evidence against Anderson relevant to danger is great, so this second factor weighs heavily in favor of detention.

### 3.  History and Characteristics

The third BRA factor considers the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community

ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

Setting the current charges aside, Anderson's PSR reflects only one previous charge for criminal solicitation in 2008, which was amended down from possession of a controlled substance. Such a history, by itself, does not lead the Court to believe that Anderson's release would pose a risk of danger to the community. That said, however, the Court cannot ignore the hearing testimony that Anderson appears to have participated in trafficking a number of highly dangerous fentanyl pills during the time leading up to her current arrest. As such, the third factor weighs only slightly in favor of detention based on risk of danger.

### 4.    Nature and Seriousness of the Danger Risk

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). In this case, this factor overlaps with consideration of the second BRA factor, the weight of the evidence against Anderson indicating danger.

As the Court discussed in its analysis of the second BRA factor, the risk of danger posed to the community by Anderson's release is significant, especially considering the large quantity of drugs found in her and Flanagan's possession, the uniquely dangerous nature of those drugs, and the fact that the drugs were accompanied by two firearms. *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases). But even assuming the risk that Anderson will

9

continue to traffic narcotics while on release is low, the potential consequences of her doing so could be devastating to the community. Puleo testified pills similar to those found in Anderson and Flanagan's possession frequently cause overdoses in the community in which the two defendants were arrested.

The nature and seriousness of the risk of danger to the community posed by releasing Anderson is simply too great, and this final factor tips decidedly in favor of detention.

### 5. Availability of Conditions Addressing Danger Risk

Finally, for the reasons discussed, the Court finds that Anderson presents a risk of danger to the community if released based primarily on her significant involvement with incredibly dangerous narcotics. While Anderson suggested at the hearing that the risk of danger can be sufficiently mitigated by substance use disorder treatment and stringent monitoring conditions, the Court is unconvinced that any combination of available conditions would reasonably quell the risk of danger to the community Anderson's risk would pose. This is especially true given the nature of Anderson's charged drug-trafficking crimes, which permits stationary involvement and discrete activity. *See, e.g.*, *United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged heroin distribution scheme from his home).

Accordingly, the Court finds that the United States has shown, by clear and convincing evidence, that no conditions can reasonably assure the safety of others or the community. Detention is independently warranted based on Anderson's risk of danger to the community.

### III.   CONCLUSION

In sum, the Court finds that the United States proved by a preponderance of the evidence that Anderson is an irremediable nonappearance risk and proved by clear and convincing evidence

that he poses a danger to the community that cannot be mitigated with conditions. Therefore, the BRA mandates that Anderson remain in detention pending trial.

Accordingly, the Court grants the United States' oral detention motion. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 3rd day of October, 2022.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY